UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
FRANK R. MORROW,

                                Plaintiff,

- against-

C.O. DUPONT and GARY MEAD, Assistant
Director, Management, U.S. Marshals Service,

                                Defendants.
----------------------------------------------------------X
FEUERSTEIN, J.

**OPINION AND ORDER**
**08 CV 3083 (SJF)(WDW)**

On September 15, 2008, *pro se* plaintiff Frank R. Morrow ("plaintiff") filed this action against defendants Correction Officer Montueray Dupont ("Dupont") and Gary Mead ("Mead"), former assistant director of the United States Marshals Service ("USMS") (collectively, "defendants"), pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. Mead now moves pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure to dismiss the complaint against him for lack of subject matter jurisdiction and failure to state a claim, respectively, and Dupont moves pursuant to Rule 12(b)(6) to dismiss the complaint against him for failure to state a claim. Plaintiff has not opposed the motions. For the reasons stated herein, defendants' motions are granted.

I.    Background

    A.    Factual Allegations[1]

---

[1] The factual allegations are taken from the complaint and are assumed to be true for purposes of this motion only. They do not constitute findings of fact by the Court.

1

Plaintiff alleges that on or about April 13, 2008, while he was being housed in unit C at the Queens Private Correctional Facility ("QPCF"), he was physically assaulted by Dupont without provocation. (Complaint [Compl.], ¶ IV). Plaintiff alleges that as a result of the assault he sustained injuries to the side of his head, neck and back and suffers from headaches, neck aches and vision problems. (Compl., ¶ IV.A).

Plaintiff further alleges that Mead was "responsible for the contract facilities" and had been aware of the abuse at the QPCF for about a year prior to his assault, but "did nothing about it." (Id.)[2]

B. Procedural History

On September 15, 2008, plaintiff filed this action against defendants pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights arising from the assault by Dupont. Plaintiff seeks monetary damages in the amount of one million dollars ($1,000,000.00). (Compl., ¶ V).

Mead now moves pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure to dismiss the complaint as against him for lack of subject matter jurisdiction and failure to state a claim, respectively, and Dupont moves pursuant to Rule 12(b)(6) to dismiss the complaint as against him for failure to state a claim. Plaintiff has not opposed the motions.

---

[2] However, according to Gerald M. Auerback, general counsel for the USMS headquarters in Washington, D.C., Mead was last employed by the USMS in March 2006 and plaintiff was only detained at the QPCF from July 2, 2007 to April 18, 2008. (Declaration of Gerald M. Auerbach dated March 26, 2009 [Auerbach Decl.], ¶¶ 6-7).

II. DISCUSSION

   A.  12(b)(1)

   1. Standard of Review

Where subject matter jurisdiction is lacking, "dismissal is mandatory." Manway Const. Co., Inc. v. Housing Authority of City of Hartford 711 F.2d 501, 503 (2d Cir. 1983). "In determining whether the federal courts have subject matter jurisdiction over a cause of action, a district court must look to the way the complaint is drawn to see if it claims a right to recover under the laws of the United States." IUE AFL-CIO Pension Fund v. Herrmann 9 F.3d 1049, 1055 (2d Cir.1993) (quoting Goldman v. Gallant Securities, Inc., 878 F.2d 71, 73 [2d Cir.1989]). In considering a motion to dismiss for lack of subject matter jurisdiction, a court must accept as true all material factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. Natural Resources Defense Council v. Johnson, 461 F.3d 164, 171 (2d Cir. 2006). However, when deciding a jurisdictional motion, district courts may look beyond the allegations of the complaint and "examine evidence outside of the pleadings." Hamm v. U.S., 483 F.3d 135, 137 (2d Cir. 2007). The plaintiff has the burden of establishing by a preponderance of the evidence that subject matter jurisdiction exists. Id.

Submissions of a *pro se* litigant must be construed liberally and interpreted "to raise the strongest arguments that they suggest." Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006). Nonetheless, "[s]ubject-matter jurisdiction, * * * refers to a tribunal's power to hear a case, a matter that can never be forfeited or waived." Union Pacific R. Co. v. Brotherhood of Locomotive Engineers and Trainmen General Committee of Adjustment, Cent. Region, 130 S.Ct. 584, 596 (2009) (internal quotations and citations omitted).

3

2.  Sovereign Immunity

"It is, of course, 'axiomatic' under the principle of sovereign immunity 'that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.'" Adeleke v. United States, 355 F.3d 144, 150 (2d Cir. 2004) (quoting United States v. Mitchell, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983)); U.S. v. Navajo Nation, ___ U.S. ___, 129 S.Ct. 1547, 1551, 173 L.Ed.2d 429 (2009). Sovereign immunity is a jurisdictional bar which, absent a waiver, shields the federal government, its agencies and its officers acting in their official capacities from suits seeking monetary damages. Department of Army v. Blue Fox, Inc., 525 U.S. 255, 260, 119 S.Ct. 687, 142 L.Ed.2d 718 (1999); F.D.I.C. v. Meyer, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); see Dotson v. Griesa, 398 F.3d 156, 177 (2d Cir. 2005) (holding that the doctrine of sovereign immunity also bars suits against federal agencies and federal officers acting in their official capacities). Since Mead is being sued as an officer of the federal government, he is, absent waiver, shielded by the doctrine of sovereign immunity from any claim seeking monetary damages against him in his official capacity. See Barbara v. New York Stock Exchange, Inc, 99 F.3d 49, 59 (2d Cir. 1996).

Although plaintiff does not identify in his complaint any statute waiving sovereign immunity for his claims against Mead in his official capacity, there are two (2) potential avenues available to him: the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671 *et seq.*, or an action pursuant to Bivens v. Six Unknown Names Agents of the Federal Bureau of Narcotics 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

a. The Federal Tort Claims Act

The FTCA contains an express waiver of the United States' sovereign immunity for claims arising out of torts committed by federal employees. See Ali v. Federal Bureau of Prisons, 552 U.S. 214, 128 S.Ct. 831, 835, 169 L.Ed.2d 680 (2008). Specifically, the FTCA authorizes "claims against the United States, for money damages * * * for * * * personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."[3] 28 U.S.C.A. § 1346(b)(1).

As a threshold matter, the United States is the only proper party in a suit seeking monetary damages for torts committed by federal employees. See 28 U.S.C. § 2674; Sprecher v. Graber, 716 F.2d 968, 973 (2d Cir. 1983). Since plaintiff does not name the United States as a party in this action, the FTCA's waiver of sovereign immunity is inapplicable to any tort claim asserted by plaintiff against Mead.

However, even construing plaintiff's claim against Mead in his official capacity as one against the United States, the FTCA requires a plaintiff to exhaust his administrative remedies prior to commencing a federal action. See 28 U.S.C. § 2675(a) ("An action shall not be instituted upon a claim against the United States for money damages for * * * personal injury * *

---

[3] 28 U.S.C. § 2671 defines "Employee of the government" to include, *inter alia*, "(1) officers or employees of any federal agency, * * *, and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation, * * *." "Federal agency" within the meaning of the FTCA expressly excludes "any contractor with the United States." 28 U.S.C. § 2671.

5

\* caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.") "[B]ecause the FTCA constitutes a waiver of sovereign immunity, the procedures set forth in Section 2675 must be adhered to strictly." Keene Corp. v. United States, 700 F.2d 836, 841 (2d Cir. 1983). "[T]he burden is on the plaintiff to both plead and prove compliance with the statutory requirements" of the FTCA. In re Agent Orange Product Liability Litigation, 818 F.2d 210, 214 (2d Cir. 1987); see also Donahue v. U.S. Transp. Sec. Admin., 457 F.Supp.2d 137, 140 (E.D.N.Y. 2006) (accord).

The FTCA's exhaustion requirement is jurisdictional and not subject to waiver. See Celestine v. Mount Vernon Neighborhood Health Center, 403 F.3d 76, 82 (2d Cir. 2005); Keene, 700 F.2d at 841. Accordingly, plaintiff's failure to establish, or even to allege, that he exhausted his administrative remedies with respect to any tort claim against Mead in his official capacity bars any such claim against the United States under the FTCA.[4] See, e.g., McNeil v. United States, 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) (holding that the FTCA bars plaintiffs from commencing actions in federal court until they have exhausted their administrative remedies); Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994) (holding that the district court properly dismissed the plaintiff's tort claims against the United States for want of subject matter jurisdiction based upon the plaintiff's failure to exhaust

---

[4] Indeed, Mr. Auerbach avers that "[t]he review of the FTCA claim records did not reveal any FTCA claims presented to the USMS by plaintiff arising out of the incident described in the complaint." (Auerbach Decl., ¶ 5).

his administrative remedies under the FTCA). Therefore, the branch of Mead's motion seeking dismissal of any tort claim asserted against him in his official capacity by the plaintiff under the FTCA is granted and any such claim is dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

However, the FTCA does not apply to claims alleging violations of federal constitutional rights. See 28 U.S.C. § 2679(b)(2). Thus, the FTCA does not waive sovereign immunity over any constitutional claim asserted by plaintiff against Mead in his official capacity.

b. Constitutional Claim

Since Mead is being sued as a federal employee, plaintiff cannot state a Section 1983 claim against him because that statute provides a claim for relief only against a defendant who acts "under color of *state* law." (Emphasis added). Accordingly, I construe plaintiff's Section 1983 claim against Mead as a claim pursuant to Bivens v. Six Unknown Names Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The Second Circuit has described a Bivens action as follows:

> "A Bivens action is a judicially-created remedy designed to provide individuals with a cause of action against federal officials who have violated their constitutional rights. [Citation omitted]. 'Bivens established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right.' Carlson v. Green, 446 U.S. 14, 18, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980). The only remedy available in a Bivens action is an award for monetary damages from defendants in their individual capacities. [Citation omitted]."

Higazy v. Templeton, 505 F.3d 161, 169 (2d Cir. 2007).

7

A Bivens claim lies only against a federal official in his individual capacity. See F.D.I.C. v. Meyer, 510 U.S. 471, 486, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); Robinson, 21 F.3d at 510. Thus, to the extent plaintiff alleges a constitutional claim against Mead in his official capacity, plaintiff cannot state a Bivens action against him. "Because an action against a * * * federal officer[] in [his] official capacit[y] is essentially a suit against the United States, such suit[] [is] also barred under the doctrine of sovereign immunity, unless such immunity is waived." Robinson, 21 F.3d at 510. Therefore, plaintiff's Bivens claim against Mead in his official capacity is dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. See, e.g. id. (holding that the district court properly dismissed the plaintiff's Bivens claims against the individual federal defendants in their official capacity for want of subject matter jurisdiction).

B.  12(b)(6)

1.  Standard of Review

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the * * * claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)

(quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557, 127 S.Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. 544, 127 S.Ct. at 1959. The plausibility standard requires "more than a sheer possibility that defendant has acted unlawfully." Iqbal, ___ U.S. ___, 129 S.Ct. at 1949.

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008), cert. denied, 128 S.Ct. 2964, 171 L.Ed.2d 906 (2008) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002)). However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, ___ U.S. ___, 129 S.Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950.

The Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. Chambers, 282 F.3d at 152-153 (citing International Audiotext Network, Inc. v. American Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)).

### 2. Bivens Claim against Mead in his Individual Capacity

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); see also Holcomb v. Lykens, 337 F.3d 217, 220 (2d Cir. 2003)(citing Weyant v. Okst, 101 F.3d 845, 857 [2d Cir. 1996]) (holding that pursuant to the doctrine of qualified immunity, "public officials are entitled to qualified immunity if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights"). In order to defeat a qualified immunity defense, the plaintiff "must allege a deprivation of an actual constitutional right clearly established at the time of the events in issue." Holcomb, 337 F.3d at 220. In determining the validity of a qualified immunity defense, courts generally should consider: (1) whether the facts alleged by the plaintiff rise to the level of a deprivation of a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation. See Pearson v. Callahan, 129 S.Ct. 808, 815-816, 172 L.Ed.2d 565 (2009).

Liberally read, plaintiff's claim against Mead is based upon supervisory liability, i.e., his alleged responsibility over a non-federal correctional facility with which the USMS contracts to house federal prisoners. Accordingly, plaintiff's claim is, in essence, that Mead's omission in failing to act to correct abuse at the QPCF, of which he was allegedly aware for more than a year prior to plaintiff's assault, was undertaken with deliberate or reckless disregard of plaintiff's constitutional rights to be free from such abuse while being housed at the QPCF.

10

For purposes of a qualified immunity defense based upon supervisory liability, a plaintiff must establish that the law violated by both the subordinate and the supervisor were clearly established.[5] See Poe v. Leonard, 282 F.3d 123, 134-135 (2d Cir. 2002). "[A] supervisor may be found liable for his deliberate indifference to the rights of others by his failure to act on information indicating unconstitutional acts were occurring or for his gross negligence in failing to supervise his subordinates who commit such wrongful acts, provided that the plaintiff can show an affirmative causal link between the supervisor's inaction and [the plaintiff's] injury." Poe, 282 F.3d at 140. Thus, Mead may only be found liable "if, in supervising [Dupont], he exhibited gross negligence or deliberate indifference to a high risk that [Dupont] would violate [plaintiff's] constitutional rights, and [Mead's] neglect caused [Dupont] to violate [plaintiff's] rights." Id.; see also Dukes v. Dep. Supt. Of Sec., 153 Fed.Appx. 772, 2005 WL 2899781 (2d Cir. Nov. 3, 2005) (summary order) (affirming dismissal of the plaintiff's Section 1983 claims against certain of the defendants on the basis that the plaintiff's allegation that certain of the defendants failed to act on knowledge of the assault on the plaintiff was insufficient to state an independent constitutional violation and that no causal connection was established between those failures and the alleged assault).

There are two (2) fatal flaws in plaintiff's claim against Mead: (a) Mead, as assistant director of the USMS, did not have a duty to supervise Dupont, an employee of the QPCF, which

---

[5] For purposes of Mead's motion, I assume that plaintiff's claim against Dupont, Mead's purported subordinate, is one for excessive force in violation of plaintiff's Fourteenth Amendment substantive due process rights. See Graham v. Connor, 490 U.S. 386, 395 n. 10, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (holding that where an excessive force claim arises in the context of pre-trial detention, it invokes the protections of the Due Process Clause.)

11

was an independent contractor of the USMS; and, more importantly, (b) it cannot be said as a matter of law that Mead's purported knowledge of abuse occurring at the QPCF over one (1) year prior to the alleged assault on plaintiff proximately caused Dupont's purported assault of plaintiff.[6] Since Mead's alleged failure to act did not violate clearly established federal law, the doctrine of qualified immunity shields him from plaintiff's remaining claim against him in his individual capacity.[7]

However, even assuming that the doctrine of qualified immunity does not shield Mead from plaintiff's claim against him in his individual capacity, for the reasons set forth in Section B(3), infra, that claim is alternatively dismissed based upon plaintiff's failure to exhaust his administrative remedies under the Prison Litigation Reform Act of 1995 (the "PLRA"), 42 U.S.C. § 1997e(a).

---

[6] Since plaintiff's claim is that Mead knew of abuse occurring at the QPCF over one (1) year prior to the date of his alleged assault, this case is distinguishable from cases in which a plaintiff's claim against a United States marshal can be interpreted as a claim that the marshal housed a plaintiff in, or failed to cause a plaintiff to be transferred from, a correctional facility in which he or she knew that unconstitutional violations were occurring. See, e.g. Kane v. Pierce, No. 1:06-cv-01564, 2009 WL 189955, at * 4 (E.D. Cal. Jan. 26, 2009) (citing cases), report and recommendation adopted by, ___ F.Supp.2d ___, 2009 WL 674127 (E.D.Cal. Mar. 16, 2009). Indeed, since Mead was no longer employed by the USMS at the time of plaintiff's detention at the QPCF, he cannot be held liable for the decision to house plaintiff at that facility, nor for the failure to transfer plaintiff from that facility.

[7] In light of this determination, it is unnecessary to consider the objective reasonableness of Mead's conduct, see, e.g. Poe, 282 F.3d at 133 (holding that the defense of qualified immunity is established when "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law.").

### 3. The PLRA

Both Mead and Dupont contend that plaintiff's <u>Bivens</u> and Section 1983 claims, respectively, must be dismissed based upon his failure to exhaust his administrative remedies, as required by the PLRA. In his complaint, plaintiff admits that he did not present his claims in any prisoner grievance procedure. (Compl., ¶ II).

The PLRA's exhaustion requirement provides as follows:

> "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

42 U.S.C. § 1997e(a).

"[E]xhaustion of available administrative remedies is required for any suit challenging prison conditions, not just for suits under § 1983," <u>Woodford v. Ngo</u>, 548 U.S. 81, 84, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006), including excessive force claims, <u>see</u> <u>Porter v. Nussle</u>, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); <u>Ruggiero v. County of Orange</u>, 467 F.3d 170, 173 (2d Cir. 2006), and <u>Bivens</u> claims, <u>see</u> <u>Porter</u>, 534 U.S. at 524, 122 S.Ct. 983; <u>see also</u> <u>Macias v. Zenk</u>, 495 F.3d 37 (2d Cir. 2007) (applying the PLRA's exhaustion requirement to a <u>Bivens</u> claim). "[E]xhaustion is mandatory under the PLRA and * * * unexhausted claims cannot be brought in court." <u>Jones v. Bock</u>, 549 U.S. 199, 211, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); <u>see also</u> <u>Johnson v. Rowley</u>, 569 F.3d 40, 45 (2d Cir. 2009) (same). Thus, plaintiff was required under the PLRA to exhaust all available administrative remedies prior to commencing this action against Mead and Dupont.

Although exhaustion under the PLRA is an affirmative defense, not a jurisdictional requirement, Jones, 549 U.S. at 216, 127 S.Ct. 910; Johnson, 569 F.3d at 45, a demonstrated failure to exhaust may be a basis for dismissal for failure to state a claim. See, e.g. Jones, 549 U.S. at 216, 127 S.Ct. 910 (recognizing that a failure to exhaust may be a basis for dismissal for failure to state a claim). Since exhaustion is an affirmative defense, it may be excused or justified under the following circumstances: "(1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such as [sic] way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedure, justify the prisoner's failure to comply with the exhaustion requirement." Ruggiero, 467 F.3d at 175. Mead and Dupont clearly did not waive the defense of failure to exhaust, as they promptly moved to dismiss the complaint on that ground, as well as others, in their pre-answer motions, and there is no indication that they otherwise "took affirmative action to prevent [plaintiff] from availing himself of grievance procedures." Ruggiero, 467 F.3d at 178. Moreover, plaintiff did not allege in his complaint that administrative remedies were not available to him, nor that special circumstances otherwise existed which justify his failure to exhaust. Although plaintiff was not required to plead such allegations in his complaint, see, e.g. Jones, 549 U.S. at 216, 127 S.Ct. 910, he also failed to oppose the instant motions establishing the affirmative defense of failure to exhaust by, *inter alia*, raising any excuse or justification for his failure to exhaust.

Since it is clear from the allegations of the complaint that plaintiff has not exhausted his administrative remedies, and plaintiff has failed to raise any excuse or justification for his failure to exhaust which would defeat that affirmative defense, plaintiff's claims against both Mead and

Dupont, which relate to prison conditions at the QPCF, must be dismissed for failure to state a claim. Accordingly, Dupont's motion to dismiss, and the branch of Mead's motion seeking dismissal of the complaint based upon plaintiff's failure to exhaust his administrative remedies, are granted.

III. Conclusion

For the reasons stated herein, defendants' motions to dismiss the complaint are granted and the complaint is dismissed in its entirety. The Clerk of the Court is directed to enter judgment in favor of defendants and to close this case.

SO ORDERED.

_____
SANDRA J. FEUERSTEIN
United States District Judge

Dated: March 15, 2010
       Central Islip, N.Y.